Commonwealth *v*. Ferguson, Appellant.

Argued November 9, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

26

*Thomas C. Carroll,* Assistant Defender, with him *John W. Packel,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*Milton M. Stein,* Assistant District Attorney, with him *Edward B. Greene,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, December 20, 1971:

Appellant was tried on a charge of aggravated robbery before a judge and jury in Philadelphia County in October of 1968, found guilty and sentenced to a term of two to ten years in prison. Post-trial motions were filed and denied, the Superior Court affirmed, and we allowed an appeal.

Appellant alleges two grounds for reversal. First, he claims that he has been twice placed in jeopardy in this case. Secondly, he alleges that his arrest was illegal and that, therefore, the out-of-court identification and the seizure of certain evidence were tainted and should have been suppressed.

On April 26, 1968, appellant came before the trial court for trial on Bills 1001 to 1003. Bills 1001 and 1002 charged appellant with aggravated robbery and conspiracy with one Rene Ferguson against Chester

Jordan. Bill 1003, the one here involved, charged appellant with aggravated robbery of Jack Goldberg. A jury was empaneled and the first witness, Chester Jordan, was called. After the witness began his testimony, and as he was about to testify concerning identification, defense counsel advised the court that a motion to suppress identification testimony was still outstanding. The court excused the jury and immediately began taking testimony on the motion. The court then recessed for the weekend.

On Monday morning, the court was informed that Jack Goldberg, the Commonwealth's key witness on Bill 1003, was ill and would not be able to testify. The district attorney stated that Mrs. Goldberg had called and said her husband was ill, suffering from subclinical pneumonia. He then said that he contacted the physician who supposedly had made that diagnosis and was told that the doctor had examined Mr. Goldberg on Saturday and that at that time Mr. Goldberg had a bad cough and a temperature of 101 degrees. The doctor would not say, however, what Mr. Goldberg's condition was, nor would he give a prognosis. This was all stated out of the hearing of appellant's counsel, who was late in arriving, but who was present for the remainder of the colloquy on this point.

The district attorney explained that Mr. Goldberg was a necessary witness, first on Bill 1003, but also to establish the validity of the whole identification process. The court then explained to defense counsel that the witness had pneumonia and asked what he suggested. Defense counsel thought that the bills could be severed and that trial could then proceed as to the bills where Chester Jordan was the victim. Earlier, a motion for severance had been denied. The district attorney felt that because of the necessity for Jack Goldberg's testimony to establish the validity of the iden-

tification process which led to the indictments for both robberies, a mistrial should be granted. The Commonwealth then moved for withdrawal of a juror. The defense objected and again raised the idea of proceeding with the Chester Jordan matter and waiting to see about Mr. Goldberg's availability. Defense counsel also noted that retrial might constitute double jeopardy. The trial court then granted the Commonwealth's motion to withdraw a juror and also denied appellant's motion to suppress pertaining to Bills 1001 and 1002.

On October 21, 1968, the case came to trial before another judge and jury. A motion to sever as to Bills 1001 and 1002 was granted. Motions to dismiss the prosecution on the ground of double jeopardy and to suppress the identification testimony of Jack Goldberg were denied. Trial was held and the jury returned a verdict of guilty as to Bill 1003 and not guilty as to Bill 1001. Bill 1002 was nol prossed because of the not guilty verdict on Bill 1001.

The trial court felt that the illness of Mr. Goldberg created an "imperious necessity" to grant the withdrawal of a juror in the first trial and for that reason denied appellant's motion in arrest of judgment. Appellant argues that this was error, contending that jeopardy attaches as soon as the jury is empaneled and sworn and, a fortiori, after evidence has been taken; that because the evidence of Mr. Goldberg's incapacity was not conclusive and there were other reasonable alternatives to granting a mistrial, e.g., granting a continuance, severing and proceeding as to the matter concerning Chester Jordan, no imperious necessity was presented.

The purpose of the Fifth Amendment provision against double jeopardy, as we said in *Commonwealth v. Richbourg*, 442 Pa. 147, 275 A. 2d 345 (1971), quoting *Benton v. Maryland*, 395 U.S. 784 (1969), is: "that

the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

In determining whether a trial judge abused his discretion in granting a mistrial, the Supreme Court, in the recent case of *United States v. Jorn*, 400 U.S. 471 (1971), rather than establishing any clear-cut rules for when a mistrial should be granted, simply reiterated the standard of "manifest necessity" first adopted in *United States v. Perez*, 22 U.S. 579 (1824) and offered the following caveat: ". . . in the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate."

Viewed in this light, we do not believe that the facts in the instant case justified the granting of a mistrial at the time of the district attorney's request. The trial could have proceeded on the other indictments, completing the testimony of Chester Jordan and other witnesses, and then granting a continuance until there was a definite diagnosis of Mr. Goldberg's condition. The court could even have sent the jury home early for the day until more was known about Mr. Goldberg's health. If he in fact did have pneumonia, then the mistrial could have been granted on the bills in which his testimony was needed. But anything less than a definite diagnosis, introduced with more formality than merely the introduction into evidence of the fact of the telephone call of the undoubtedly nervous wife of the prose-

cution witness, does not give the trial court ample grounds for subjecting appellant to the continuing ordeal of a pending trial.

The Commonwealth seeks to distinguish the case of *Downum v. United States*, 372 U.S. 734 (1963), upon which appellant relies, by emphasizing that it was not negligent as the prosecution was in *Downum*. However, we do not read the double jeopardy provision of the Constitution to forbid the evils of double jeopardy only when the mistrial was requested by a negligent prosecution. Moreover, the Commonwealth was careless in its attempt to establish its right to a mistrial. It obviously forgot that any doubts as to the existence of a "manifest necessity" of granting a mistrial must be resolved, as the Supreme Court said in *Downum, supra*, at page 738: ". . . in favor of the liberty of the citizen, rather than [by exercising] what would be an unlimited, uncertain, and arbitrary judicial discretion."

Consequently, if the Commonwealth wished to overcome these doubts and to persuade the trial court to engage in such an extraordinary exercise of discretion, it should have offered more substantial evidence of the "manifest necessity" required for such exercise.[1]

Judgment arrested and appellant discharged.

Mr. Chief Justice BELL and Mr. Justice BARBIERI took no part in the consideration or decision of this case.

---

[1] Rule 1118 of the Rules of Criminal Procedure, which became effective after the appellant's first trial, states that "only the defendant or the attorney for the defendant may move for a mistrial."