369 A.2d 471

COMMONWEALTH of Pennsylvania

v.

Forrest WILSON, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 10, 1975.

Decided Nov. 22, 1976.

416

Eugene A. Kestenbaum, Assistant Public Defender, Doylestown, for appellant.

Stephen B. Harris, First Assistant District Attorney, Doylestown, for appellee.

Before WATKINS, P. J., and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

WATKINS, President Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Bucks County, Criminal Division, by the defendant-appellant, Forrest Wilson, after

conviction in a jury trial of attempted robbery, attempted larceny, assault and battery and two counts of conspiracy; and from the denial of post-trial motions.

The defendant was first brought to trial on October 11, 1973, before the Honorable Arthur B. Walsh, Jr. and a jury. A mistrial was declared on the motion of defense counsel when it was discovered during the trial that one of the jurors had a hearing problem.

On October 31, 1973, the defendant was again brought to trial before the Honorable Robert M. Mountenay and a jury. Again, on motion of defense counsel, a mistrial was declared as a result of prejudicial statements made in front of the jury by a prosecution witness.

On November 20, 1973, the defendant was again brought to trial before a jury, with the Honorable Lawrence A. Monroe presiding. The jury retired for deliberations at 4:00 P.M. on November 21, 1973. At 7:00 P.M. the jury reported to the court that they were hopelessly divided and could not reach a verdict and the court then declared a mistrial over the objection of the defendant. On January 14, 1974, the appellant's application to quash the indictment on the ground of double jeopardy was denied by Judge Monroe.

On January 14 and 15, 1974, the appellant was tried before the Honorable Edmund V. Ludwig and a jury and was found guilty. Post-trial motions were denied and this appeal followed.

The appellant had moved to suppress evidence as to a statement made by him subsequent to his arrest and the search made pursuant to the arrest. He also complained of the examination at the hospital and alleged that the warrant secured by the arresting officer was not based upon probable cause.

The laws of Pennsylvania have defined probable cause as facts or circumstances, within the knowledge of the arresting officer at the time of arrest, which are suf-

ficient to warrant a reasonable man to believe that the suspect has committed a crime. *Commonwealth v. Milliken*, 450 Pa. 310, 300 A.2d 78 (1973). In this case then, we must deal with the problem of whether an informative tip can satisfy the requirement of probable cause to issue an arrest warrant. The Supreme Court of the United States has recognized that informants' tips are but hearsay. Nevertheless, they may constitute probable cause when two standards are met:

(1) There must be underlying circumstances which enable the issuing magistrate to judge the validity of the informant's claim.

(2) The officer seeking the warrant must present facts from which the magistrate can infer the tip is a reliable one.

*Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1974); *Spinelli v. U. S.*, 393 U.S. 410, 89 S.Ct. 584 21 L.Ed.2d 637 (1967); *Commonwealth v. Davis*, 466 Pa. 102, 351 A.2d 642 (1976).

■ Appellant contends there was no showing of reliability. However, the informant described the circumstances surrounding the robbery which is an indication of reliability. As it was pointed out in *Spinelli*, supra, 393 U.S. at page 416, 89 S.Ct. at page 589, 21 L.Ed.2d at page 644:

"In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip described the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation."

The standard for probable cause to arrest was satisfied by the informant's tip.

As the Honorable Arthur B. Walsh, Jr. stated in his opinion:

"In reaching his decision not to suppress the evidence, the hearing judge recognized that the information stated by the officer to the magistrate failed to include specifically how the informer linked defendant's name with the robbery. It was felt, however, that the circumstances surrounding the reported assault were in themselves sufficient to negate the possibility that the 'tip' was merely an unsupported rumor or fabrication. First and foremost was the victim's statement that he had shot two assailants. Secondly, at the time the officer received the tip he had firsthand confirmation that at least one man was wounded and in custody. Thirdly, the street address given in the tip was in the neighborhood of the assault. Fourthly, the very nature of the tip that the alleged assailant was at that moment lying wounded on his couch was such as to belie fabrication. These circumstances together with the other information given to the magistrate sufficiently protected the defendant from invasion of the constitutional guaranty against unreasonable searches and seizures."

We find the search warrant valid and the denial of suppression by the court below proper.

Over the objection of the defendant, Dr. William Chamberlain, the Director of Surgery of Lower Bucks County Hospital, testified that he examined the defendant, Forrest Wilson, on March 28, 1971. This witness testified that upon examination he noted a "puncture-type wound" in the chest and shoulder area of the defendant and that based upon his observations of the wound and his consultation with and examination of certain X-Rays of the patient, he concluded that the wound was caused by a "projectile". This evidence was offered for the purpose of corroborating the testimony of the victim,

Mr. Sloan, who testified that upon arrest he noted a wound in the shoulder area of the defendant.

The defense contends that the evidence was inadmissible because it was "prejudicial" and that its inherent prejudice outweighed its value as admissible evidence. The defense contends in part, that the Commonwealth's failure to produce "qualified witnesses" to substantiate that the X-Rays relied upon were in fact those of the defendant was error.

In resisting this claim, the Commonwealth relied on *Commonwealth v. Thomas*, 444 Pa. 436, 282 A.2d 693 (1971), in which the Supreme Court clearly indicated that a medical expert may express his opinion, even though the opinion is based in part upon the reports of other persons which are not in evidence. In concluding that such an opinion is admissible as an exception to the hearsay rule, the court concluded that the opinion was based upon the reports of others to which the expert witness customarily relies in the practice of his profession.

Appellant further contends that the declaration of a mistrial by the court below after the conclusion of the November 20, 1973 trial was improper as having been ended without the requisite manifest necessity and barred subsequent trial so as to constitute "double jeopardy".

The factual situation preceding the declaration of a mistrial appears to be as follows:

On Wednesday, November 21, 1973, after a two-day trial before the Honorable Lawrence A. Monroe, the jury retired at 4:00 P.M. to deliberate. At some time during the course of their deliberations, (time undetermined from the record) the jury directed an inquiry to the court via a note sent through the tipstaffs. At 5:42 P.M. the court called the jury to the courtroom and instructed them as to the question contained in the note, and thereafter, sent the jury out for further deliberations.

At 6:35 P.M. after the jury had been deliberating for 2 and ½ hours, defense counsel asked "that the jury be permitted to go out to have something to eat, and afterward they can continue with their deliberations in the case." After stating on the record that there had been no requests by the jury to suspend deliberations Judge Monroe requested that counsel inquire of the defendant whether he was agreeable to having the jury retire during mealtime. After the defendant agreed to his counsel's request, the court declared its intention to ". . . bring the jury in, first of all, and ask them whether they are near a verdict, and if they state they are not, we will ask them whether they care to go out and eat."

At 6:40 P.M. the court directed that the jury be brought into the courtroom whereupon the following colloquy ensued.

THE COURT: Members of the Jury: I am not asking the question for the purpose of putting any pressure upon you whatsoever. The question is this: Are you near to reaching a verdict or do you think you are going to need considerably more time before you reach a verdict?

THE FOREMAN: I think we will need considerably more time.

THE COURT: Very well. So you want to go out and eat, and then come back and deliberate? I do not know whether we can get out to a restaurant that will serve all twelve at the County's expense. The County has not made arrangements with any restaurant to accommodate twelve jurors in a situation like this.

\*     \*     \*     \*     \*     \*     \*     \*

Would you want to discuss this among yourselves and report back to me or retire and discuss whether you want to continue with your deliberations, or whether you want to interrupt by going out to dinner?

\*     \*     \*     \*     \*     \*     \*     \*

If you want to go back now and discuss what I have just presented to you, take five or ten minutes.

THE FOREMAN : We will do this very promptly.

Thereafter, the jury again retired. At some time after the jury retired, the court requested a conference with counsel, in chambers, to discuss the circumstances under which one of the jurors had found herself unprepared for her monthly period which had "suddenly come upon her." After counsel had agreed that this particular juror be permitted to leave temporarily the tipstaff handed the court an additional note from the jury which read as follows :

"In addition to my spoken word, we anticipate a divided jury no matter how long we talk."

Thereafter, the court inquired as to the advisability of declaring a mistrial, and noted on the record certain "complications" it considered in suggesting this course of action. The court noted the difficulties in making dinner arrangements, the possibility of the separation of the jurors, and "the inability of the jury . . . apparently to agree . . ." In addition, Judge Monroe noted that it was "the eve of Thanksgiving Day, and the women on the jury who have chores to prepare for tomorrow's celebration, which may have some effect upon their verdict." The court also noted that defense counsel "express some concern about the Clergyman, who might have his congregation in mind, and not be able—to give all those matters consideration . . ." Although there is nothing definitive in the record regarding this "Clergyman" there was some mention made that one of the jurors had expressed some concern regarding the convening of his congregation later that evening—at the conclusion of the court's remarks on this subject counsel for defendant agreed that the court had properly stated the facts concerning this incident.

After placing these matters on the record, and noting the defendant's objection to the declaration of the mistrial, the court reconvened the jury. At this point the court asked the eleven remaining members of the panel whether they agreed with the latest note from the foreman and after questioning, the following conversation took place:

THE COURT: . . . I have received this note, ladies and gentlemen:

"In addition to my spoken word, we anticipate a divided jury no matter how long we talk."

Is that the note of the jury?

THE FOREMAN: That is right, Your Honor.

THE COURT: Do each and every one of you eleven agree with this note?

THE JURORS: Yes.

THE COURT: Is it your opinion no matter how long you discuss this matter, you will be unable to reach a verdict?

THE JURORS: Yes.

THE COURT: Each and every one of that opinion?

THE JURORS: Yes.

THE COURT: All shaking your head and answering in the affirmative?

THE JURORS: Yes.

THE COURT: Is there anyone upon the jury who is not of the opinion that further discussions would be fruitless? (No response)

THE COURT: Very well. In the opinion of the Court, to require the jury to continue to deliberate under the present circumstances would be coercive . . .

At 7:00 P.M., after the jury had deliberated for three (3) hours, the court declared a mistrial.

424

■ Whether or not the facts present a case of manifest necessity is one of degree and each case must turn on its own facts. The resolution of the variables of each case is left to the sound discretion of the trial judge. Under all the facts and circumstances of this case the court below did not abuse its discretion in declaring a mistrial. The inability of a jury to agree on a verdict is clearly a ground for a mistrial. *Commonwealth v. Spencer*, 442 Pa. 328, 275 A.2d 299 (1971) ; *Commonwealth v. Kent*, 355 Pa. 146, 49 A.2d 388 (1946). Had the court insisted upon further deliberations under these circumstances it would clearly have put him into a position where coercion could be claimed by the appellant had a guilty verdict resulted. Cases are numerous wherein our courts have declared that a properly declared mistrial does not give rise to double jeopardy upon subsequent retrial. *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727 (1972).

Judgment of sentence is affirmed.

HOFFMAN, J., files a dissenting opinion in which SPAETH, J., joins.

HOFFMAN, Judge, dissenting:

Appellant contends that the double jeopardy provisions of the Pennsylvania[1] and United States Constitutions[2] barred his trial on charges of attempted robbery, attempted assault with intent to rob, aggravated assault and battery, and related counts of conspiracy.

On October 12, 1971, appellant was indicted for the attempted robbery of Paul F. Sloan in Bristol Township. On October 10, 1973, pre-trial motions were heard and denied. Appellant's first jury trial began on October 11, 1973. Defense counsel's motion for mistrial was granted when it was discovered that one of the jurors had a hear-

1. Pa.Const. art. I, § 10.
2. U.S.Const. amend. V and XIV.

ing problem. A second jury trial was commenced on October 31, 1973, which also ended in a mistrial on the motion of defense counsel because of prejudicial statements by a prosecution witness.

On November 20, 1973, a third jury trial was commenced. At 4:00 p. m., on November 21, 1973, the jury retired to deliberate. At 5:42 p. m., the jury returned with a question and was sent back to deliberate shortly thereafter. At 6:40 p. m., the court summoned the jury to inquire about the progress of its deliberations and to determine what, if any, dinner arrangements would be necessary. The judge informed the jury foreman that there would be some difficulty in arranging dinner for all the jurors at county expense, but suggested that, if considerably more time would be necessary, it would be possible for the members of the jury to make their own dinner arrangements and return in the evening to deliberate. The foreman advised the judge that the jury would need considerably more time to reach a verdict. The judge suggested that the jury retire to discuss what dinner plans would best suit its needs.

While the jury was discussing its plans for eating, the tipstaff informed the judge that one of the jurors had begun her menstrual period and did not have any sanitary napkins with her. The court requested that the tipstaff make the necessary arrangements for the juror. Before the tipstaff departed, she handed the judge a note from the foreman which read: "In addition to my spoken word, we anticipate a divided jury no matter how long we talk." The judge consulted with the attorneys for both sides and noted that various complications had arisen: the fact that in making dinner arrangements there was the distinct possibility that the members of the jury would be separated, the problem of the female juror's unexpected menstrual period, the fact that female members of the jury might be anxious about the delay in preparing for Thanksgiving festivities, and the fact that

one of the members of the jury was a clergyman who would be precluded from conducting services with his congregation. The court asked for consent of counsel to declare a mistrial. After consultation with his client, counsel for appellant objected. The court felt, nevertheless, that, if the jury were forced to reach a verdict, it would be subject to reversal on appeal on the grounds that it was coerced. The court then resolved to declare a mistrial.

The jury was called in and the following colloquy occurred:

"THE COURT: You will note that the jury is in the room and eleven of them are present. Number Two Juror is absent, for matters which I have put on the record.

"THE FOREMAN: That is right, Your Honor.

"THE COURT: Do each and every one of you eleven agree with this note?

"THE JURORS: Yes.

"THE COURT: Is it your opinion no matter how long you discuss this matter, you will be unable to reach a verdict?

"THE JURORS: Yes.

"THE COURT: Each and every one of you of that opinion?

"THE JURORS: Yes.

"THE COURT: All shaking your head and answering in the affirmative?

THE JURORS: Yes.

"THE COURT: Is there anyone upon the jury who is not of the opinion that further discussions would be fruitless?

"(No Response)"

A mistrial was declared at 7:00 p. m.

On January 14, 1974, the court heard appellant's motion to dismiss the indictment on the ground that a fourth trial, after the court's *sua sponte* declaration of a mistrial, would constitute double jeopardy. Appellant's motion was denied, and he was subsequently convicted of all charges. Post-trial motions were denied and this appeal followed.[3]

The issue is whether the *sua sponte* declaration of a mistrial over defendant's objection under the circumstances of this case precluded appellant's retrial. The Double Jeopardy Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), bars retrial unless the declaration of a mistrial was dictated by "manifest necessity" or the "ends of public justice." *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *United States v. Perez*, 22 U.S. (9 Wheaton) 579, 6 L.Ed. 165 (1824); *Commonwealth v. Wideman*, 453 Pa. 119, 306 A.2d 877 (1973); *Commonwealth v. Ferguson*, 446 Pa. 24, 285 A.2d 189 (1971); *Commonwealth v. Kennedy*, 229 Pa.Super. 189, 323 A.2d 384 (1974); *Commonwealth v. Culpepper*, 221 Pa.Super. 472, 293 A.2d 122 (1972).

"Manifest necessity" is difficult to quantify, and ". . . virtually all of the cases turn on the particular facts . . .". *Illinois v. Somerville*, 410 U.S. 458, 462, 465, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1973).

---

**3.** Appellant also contended both in written post-trial motions and in his brief that: (1) it was error for the court below to admit certain expert testimony because it was hearsay; and, (2) it was error for the court to refuse to suppress a "search" of appellant's body and certain statements made by appellant because they were the product of an unlawful arrest. The opinion of the court below indicates that appellant abandoned these issues by not arguing them orally, despite the fact that the record clearly reflects that these issues were preserved for appeal and were extensively discussed in briefs to the court below. Because I would hold that appellant's retrial would be barred by double jeopardy, it is unnecessary to pass on these two arguments for award of a new trial.

"Manifest necessity" *may* result when a jury is dead-locked, but deciding when to abort the proceedings, how-ever, is a difficult task: "If a Judge discharges a jury before it returns a verdict, the defendant will likely plead at the second trial 'double jeopardy' unless he has expressly consented to its discharge. On the other hand, if a Judge urges a jury to resume deliberating, and it thereafter brings in a verdict of guilty—the defendant will frequently contend that the jury's verdict was coerced. See, for example, *Commonwealth v. Clark*, 404 Pa. 143, 170 A.2d 847, where this Court (a) held that the trial Judge erred in ordering a confused and overworked jury to continue its deliberations, and (b) reversed the judgment of first degree murder because the verdict was coerced, and (c) remanded the case for a new trial. Cf. also: *Commonwealth v. Moore*, 398 Pa. 198, 157 A.2d 65." *Commonwealth v. Baker*, 413 Pa. 105, 114, 196 A. 2d 382, 386.[4]

It is permissible for a trial judge to send a jury back several times even after they have indicated an inability to agree. Cf. *Devault v. United States*, 338 F.2d 179 (10th Cir. 1964); *Commonwealth v. Kennedy*, supra; Annot., 93 A.L.R.2d 627, 639 (1964). But a trial judge commits reversible error if he compels a jury to deliber-ate so long that its verdict is the product of impatience, fatigue, or confusion. See *Commonwealth v. Clark*, su-pra. "The reasonableness of the deliberation period de-pends upon such factors as the length of the trial, the nature or complexity of the case, the volume and nature of the evidence, the presence of multiple counts or multi-ple defendants, and the jurors' statements to the court

---

4. "Manifest necessity" may also result ". . . where the declaration of a mistrial implements a reasonable state policy and aborts a proceeding that at best would have produced a verdict that could have been upset at will by one of the parties, the de-fendant's interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice. *Wade v. Hunter*, supra." *Illinois v. Somerville*, supra at 471, 93 S.Ct. at 1074.

concerning the probability of agreement. Annot., 93 A. L.R.2d 627 (1964)." American Bar Association, Standards Relating to Trial by Jury § 5.4, *Commentary* Section 5.4(b) at 147–48 (Approved Draft, 1968).

To be sure, a trial judge must strike a delicate balance between the "defendant's valued right to have his trial completed by a particular tribunal" and the "public's interest in fair trials designed to end in just judgments." *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). The decision to declare a mistrial because a jury cannot agree or to urge the jurors to return to their deliberations is committed to the sound discretion of the trial judge; but appellate review of an exercise of that discretion is guided by the following standard: "As the United States Supreme Court said in *Downum v. United States*, 372 U.S. 734, 738, 83 S.Ct. 1033, 1035, 10 L.Ed.2d 100 (1963), any doubts as to the existence of a 'manifest necessity' of granting a mistrial must be resolved '. . . in favor of the liberty of the citizen, rather than [by exercising] what would be an unlimited, uncertain, and arbitrary judicial discretion.' See *Commonwealth v. Ferguson*, supra, 446 Pa. at 30, 285 A.2d 189; *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727 (1972)." *Commonwealth v. Culpepper*, supra, 221 Pa.Super. at 477, 293 A.2d at 124.

In the instant case, the jury deliberated an hour and forty minutes before submitting its first written question to the court. After a brief interruption in the jury's deliberations while the court gave its instruction, the jury was sent to resume its work. Less than an hour later, the court, during the discussion related to dinner arrangements, received its first indication from the foreman that substantial additional time would be needed to produce a verdict. When asked to discuss what dinner plans the jury wished to make, the jury sent its first note indicating that it was having trouble reaching a ver-

dict. Thus, the jury deliberated less than three hours before the mistrial was declared at 7:00 p. m.

Although there was multiple counts charged in the indictment, all arose out of the same transaction. The only issue necessary for a verdict was the relatively simple question of the identity of the perpetrator of the crime. The trial was relatively short, requiring only a few hours of testimony by a small number of witnesses. These factors might weigh in favor of curtailing the jury's deliberations sooner than if there were more complex issues or more time-consuming testimony. The trial court was properly concerned about the numerous obstacles to reasoned deliberations. It should be noted, however, that the defendant was prepared to waive all objections to the verdict which might have rested on its potentially coerced nature.[5]

I would, therefore, hold that the "defendant's valued right to have his trial completed by a particular tribunal" was prematurely terminated in the instant case. I do not believe that there was "no reasonable probability of agreement." See *Commonwealth v. Brown*, 451 Pa. 395, 301 A.2d 876 (1973); *Commonwealth v. Spencer*, 442 Pa. 328, 275 A.2d 299 (1971). Had the jury continued its deliberations and found appellant guilty, appellant could not have objected to the verdict as being coerced—that objection was effectively waived. Appellant had made a counselled choice to continue with the jury empanelled at his third trial and was thus entitled

5. I do not mean to suggest here that once a defendant elects to continue with a particular jury that a trial judge is precluded from declaring a mistrial for the reason that the jury has become exhausted, confused or impatient or for the reason that it shows "no reasonable probability of agreement". Neither would it be appropriate or permissible for a trial judge to permit the jury to continue its deliberations after it is apparent that the jurors are "hopelessly deadlocked", even if the defendant had once indicated his willingness to continue with the jury. Rather, the court should be guided by the decisions of *Brown* and *Spencer*, on the one hand, and *Clark* on the other to see that the public interest in fair trials is preserved.

to a verdict from this jury unless it became "hopelessly deadlocked." The record is devoid of facts which would support the conclusion that the *sua sponte* declaration of a mistrial was compelled by "manifest necessity." Thus I conclude that the declaration of the mistrial was premature and would hold that appellant's retrial was barred by the Double Jeopardy Clause.

I would, therefore, reverse the judgment of sentence, and order appellant discharged.

SPAETH, J., joins in this dissenting opinion.