393 A.2d 778

**COMMONWEALTH of Pennsylvania**

v.

**Jeffrey A. CARSON, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1976.

Decided Oct. 20, 1978.

---

Edward F. Browne, Jr., Assistant Public Defender, Lancaster, for appellant.

John A. Kenneff, Assistant District Attorney, with him D. Richard Eckman, District Attorney, Lancaster, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This appeal raises the question of whether the federal rule that jeopardy attaches once a jury is sworn, *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *United States v. Pecora,* 484 F.2d 1289 (3d Cir. 1973), is of federal constitutional dimension and therefore must be applied in state proceedings.[1]

–1–

Appellant was charged with delivery of one ounce of marijuana in violation of the Controlled Substance, Drug,

---

1. The double jeopardy clause of the Fifth Amendment of the United States Constitution was made applicable to the states through the Fourteenth Amendment in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

Devise and Cosmetic Act[2] and with criminal conspiracy to deliver marijuana.[3] On Friday, November 21, 1975, appellant was brought to trial in the Lancaster County Court of Common Pleas. The jury was empaneled and sworn, but before testimony was taken the court recessed for the weekend. When the court reconvened at 9:00 a. m. on Monday, appellant was not present. Appellant's house was called, but there was no answer; police officers sent to the house were unable to find appellant. At 10:45 a. m. the court *sua sponte* declared a mistrial. No objection to the declaration was recorded by appellant's counsel. Next the court ordered appellant's bail forfeited and issued a bench warrant. Immediately thereafter, the police learned that appellant was at Lancaster General Hospital, and before noon, he was taken into custody.

New counsel was appointed to represent appellant.[4] He filed a motion to quash the indictments, arguing that a second trial would violate the double jeopardy clause of the Fifth Amendment of the United States Constitution because there had been no manifest necessity to justify the court's *sua sponte* declaration of a mistrial at the first trial. The motion was denied without a hearing.[5]

2. Act of Apr. 14, 1972, P.L. 233, No. 64, as amended, § 13(a)(30), 35 P.S. § 780–113(a)(30).

3. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, effec. June 6, 1973, 18 Pa.C.S.A. § 903.

4. Both new and old counsel were from the Public Defender's office.

5. In his motion appellant alleged that on Monday morning, when the court reconvened, he was ill and had been taken to Lancaster General Hospital for treatment, and also, that at approximately 10:30 a. m. the office of the district attorney was notified of his whereabouts but that this information was not made known to the court. In its answer the Commonwealth denied that its office had been notified but alleged that after the mistrial was declared the district attorney was told by the police that appellant might be at the hospital; the Commonwealth admitted that "the police confirmed the fact that [appellant] had been taken to the hospital during the morning . ." The lower court entered a summary order denying appellant's motion to quash "by reason of the fact that it determines there was no double jeopardy in this matter." However, the order contained no findings of fact.

At the beginning of the second trial, on January 21, 1976, counsel again argued that the trial would violate the double jeopardy clause. Counsel was allowed to make an offer of proof regarding the lack of manifest necessity. N.T. 3–5.[6]

6. The offer of proof made by appellant's attorney was as follows:

MR. TRIGG: Your, Honor, there was, on these Indictments, a motion to dismiss on the grounds of double jeopardy and an answer was filed by the Commonwealth which places some facts in issue and Your Honor entered an order denying the motion without a hearing. If there is to be no hearing on that I would like to make an offer of proof as to what I would be able to prove to support the double jeopardy motion.

THE COURT: All right.

MR. TRIGG: If there were a hearing I would—

THE COURT: Why did you ask for dismissal?

MR. TRIGG: On the grounds of double jeopardy.

If the Court please, at the time that you—the case was dismissed. This is what I offered to prove; the jury was selected and sworn and then there was a recess for the weekend. On Monday morning he was taken to the hospital. I would offer the testimony of Carolyn Sheetz, to the effect that about ten o'clock in the morning she went to the hospital with him. She called the District Attorney's Office on the telephone in the Law Library. She informed the person that answered the phone on behalf of the D.A. that Mr. Carson was at the hospital. And when the Court met—convened at 10:45, approximately thirty, forty-five minutes later, the Court was not informed of that fact, was not informed that he could be available on that same day to continue the trial. And the Court terminated the trial at that point.

THE COURT: Did you object?

MR. TRIGG: I was not his counsel and I don't know what objection was made.

THE COURT: Who was it?

MRS. HERR: Harold Budding.

THE COURT: We have to be confronted with these things and Budding [an evident inadvertence from "Mr. Carson"] wasn't here when he was supposed to be here.

MR. TRIGG: He should have been here and I recognize that, Your Honor. On the other hand, he was, in fact, in custody, the Sheriff picked him up by eleven o'clock in the morning, so that the trial could have been continued before noon or could have been resumed.

MRS. HERR: Your Honor, he is trying to claim double jeopardy where there is no double jeopardy until after the first witness is sworn.

[Whereupon, a discussion was held off the record.]

THE COURT: The Court will deny that motion for double jeopardy.

MR. TRIGG: The offer of proof will preserve my exception?

THE COURT: Yes.

N.T. 3–5.

The court treated the offer as a hearing on the merits and rejected counsel's argument.[7] A jury convicted appellant on both charges. Timely post-verdict motions, raising *inter alia* the double jeopardy issue, were filed and denied, and sentence was imposed. This appeal followed; the only issue raised is the double jeopardy issue.

–2–

We must consider whether the double jeopardy issue has been preserved for our review. As mentioned, at the first trial appellant's counsel recorded no objection to the court's *sua sponte* declaration of a mistrial. Generally, counsel's failure to raise a claim in the court below precludes appellate review. *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974). However, in *Commonwealth v. Fredericks,* 235 Pa.Super. 78, 340 A.2d 498 (1975), we held:

> While we agree that a discussion on the record concerning the reasons which impel the trial court to declare a mistrial would be instructive to any subsequent trial or appellate court concerned with a double jeopardy question, we do not readily perceive why it is the defendant's burden to establish such a record. We so conclude for the following reasons:
>
> First, it is not the declaration of a mistrial which offends appellant's rights, it is his subsequent prosecution for the same offense which runs afoul of the Fifth and Fourteenth Amendments. No defendant has a constitutional right to be acquitted by a jury, and no defendant can demand that his trial proceed to verdict if the Commonwealth wishes to discontinue the cause. It is inconsistent to require a defendant to object to the declaration of a mistrial when he has no right to demand that the charges proceed to verdict. Furthermore, it is well known that the Commonwealth, having once been stymied at a jury trial, frequently will not reprosecute when a relative-

---

7. However, again no findings were made regarding the disputed facts. See n. 5, *supra.*

ly minor felony is involved. If the Commonwealth may wish to make a second effort at a conviction, it is the Commonwealth which should insure that the court does not declare a mistrial unless manifest necessity requires it. For, it is the Commonwealth which in fact has lost the case if the court erroneously grants a mistrial.

Thus, we are in full agreement with the statement of one court that:

> "It would be a harsh rule to hold that defendant consented to a withdrawal of the case from the jury simply because he interposed no objection, which, possibly, he did not know he had a right to do. Besides, consent is active, while not objecting is merely passive. The old adage 'Silence gives consent,' is not true in law; for there it only applies where there is some duty or obligation to speak. If it had appeared in the 'case,' as it does not, that the prisoner was asked whether he objected to the motion to withdraw the case from the jury, and he had said 'No,' or had even remained silent, then the result would have been different. As it was, however, we think it would be going too far to hold that he consented to a withdrawal of the case."

*Id.*, 235 Pa.Super. at 85–86, 340 A.2d at 501. (citations omitted)

Our Supreme Court's decision in *Commonwealth v. Bartolomucci*, 468 Pa. 338, 362 A.2d 234 (1976) is in accord. There the Court held that

> [T]he lack of objection, or the lack of a correct specific objection . . . does not constitute a waiver of a claim that the mistrial was not manifestly necessary . . .

Id., 468 Pa. at 347, 362 A.2d 239.

–3–

■ The double jeopardy clause of the Fifth Amendment provides:

> . . . [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . .

Therefore, even before the clause will bar a second trial the defendant must have been "put in jeopardy" at the first trial.

This court has adhered to the rule that in a jury case, jeopardy attaches when the jury is sworn, but that in a non-jury case, jeopardy does not attach until the trial judge has begun to hear evidence. *Commonwealth v. Stroup*, 244 Pa.Super. 173, 181, 366 A.2d 1248, 1252 (1976); *Commonwealth v. Smith*, 232 Pa.Super. 546, 548–49, 334 A.2d 741, 742–43 (1975) (allocatur refused). The Commonwealth argues, however, that this rule has been abrogated by subsection 4 of Section 109 of the Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 109, and that by virtue of that section, jeopardy does not attach until the first witness is sworn, whether the trial is jury or non-jury. If this argument is correct, jeopardy had not attached at appellant's first trial, for no witness had been sworn when the mistrial was declared, from which it would follow that appellant's second trial was not barred.

Subsection 4 provides that a second prosecution is barred when

> the former prosecution was improperly terminated *after the first witness was sworn but before a verdict*, or after a plea of guilty was accepted by the court. (Emphasis added.)

This provision is similar to section 1.08 of the Model Penal Code, the comment to which states in part:

> To come within the ban of this section, the termination must take place after the first witness is sworn. This is a change from existing law which distinguishes between a trial before the court and a trial before a jury. When before a jury, jeopardy attaches when the jury is sworn . . . .; when before the court, jeopardy does not attach until the first witness is sworn . . . There seems to be no reason to perpetuate the distinction. Comment (Tent. Draft No. 5, 1956).

This comment plainly supports the Commonwealth's argument, and might appear to settle the matter. However, in a

recent decision, *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), the Supreme Court of the United States has determined that the federal constitution requires that the distinction between jury and non-jury trials be maintained. In *Crist*, Montana argued that "the federal standard is no more than an arbitrarily chosen rule of convenience", and that therefore Montana could provide as a matter of state law[8] that jeopardy did not attach until the first witness was sworn. In rejecting this argument the Court said:

> If the rule that jeopardy attaches when the jury is sworn were simply an arbitrary exercise of line-drawing, this argument might well be persuasive, and it might reasonably be concluded that jeopardy does not constitutionally attach until the first witness is sworn, to provide consistency in jury and nonjury trials. Indeed, it might then be concluded that the point of the attachment of jeopardy could be moved a few steps forward or backward without constitutional significance.

> But the federal rule as to when jeopardy attaches in a jury trial is not only a settled part of federal constitutional law. It is a rule that both reflects and protects the defendant's interest in retaining a chosen jury. We cannot hold that this rule, so grounded, is only at the periphery of double jeopardy concerns. Those concerns—the finality of judgments, the minimization of harassing exposure to the harrowing experience of a criminal trial, and the valued right to continue with the chosen jury—have combined to produce the federal law that in a jury trial jeopardy attached when the jury is empaneled and sworn.

> We agree with the Court of Appeals that the time when jeopardy attaches in a jury trial "serves as the lynchpin

8. Mont.Rev.Codes Ann. § 95–1711(3) (1947) provides in part: [A] prosecution based upon the same transaction as a former prosecution is barred by such former prosecution under the following circumstances: . . . (d) The former prosecution was improperly terminated. Except as provided in this subsection, there is an improper termination of a prosecution if the termination is for reasons not amounting to an acquittal, and it takes place after the first witness is sworn but before verdict. . . .

for all doubt jeopardy jurisprudence." . . . In *Illinois v. Somerville*, 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425, a case involving the application of the Double Jeopardy Clause through the Fourteenth Amendment, the Court said that "jeopardy 'attached' when the first jury was selected and sworn." Today we explicitly hold what *Somerville* assumed: the federal rule that jeopardy attaches when the jury is empaneled and sworn is an integral part of the constitutional guarantee against double jeopardy. *Id.* at 37, 98 S.Ct. at 2161. (footnotes omitted)

■ In light of this holding, it would be unconstitutional to apply subsection 4 of Section 109 to jury trials.[9] Therefore, where, as here, the jury at the first trial was empaneled and sworn, as a matter of federal constitutional law jeopardy attached. Thus we must determine whether the court's *sua sponte* declaration of a mistrial was manifestly necessary. *United States v. Perez*, 22 U.S. 579, 580 (9 Wheat), 6 L.Ed. 165 (1824).

–4–

■ In *Commonwealth v. Stroup, supra,* we said:

The trial court may exercise its discretion on the subject of granting a mistrial upon a finding of "manifest necessity" therefor. *Commonwealth v. Robson*, 461 Pa. 615, 337 A.2d 573 (1975), cert. denied, 423 U.S. 934, 96 S.Ct. 290, 46 L.Ed.2d 265 referring to *United States v. Perez, supra.* Such finding can be made only upon a case-by-case basis. *Commonwealth v. Coleman*, 235 Pa.Super. 379, 341 A.2d 528 (1975), allocatur refused October 28, 1975, and *Commonwealth v. Monte*, 459 Pa. 495, 329 A.2d 836 (1974). Guidance for this determination is given in *Robson, supra,* and includes situations such as the trial judge's or key

9. The Supreme Court of the United States has held that in nonjury trials jeopardy does not attach until the first witness is sworn. *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). Therefore, subsection 4 of section 109 may constitutionally be applied to nonjury trials. *See* Rules of Construction, Act of Nov. 25, 1970, P.L. 707, No. 230, added 1972, Dec. 6, P.L. 1339, No. 290, § 3, 1 Pa.C.S.A. § 1925.

witness' prolonged absence, or the inability after many hours' deliberation of the jury to return a verdict. If any doubt should exist as to the presence of "manifest necessity" or the "interest of public justice" in the findings of the lower court's grant of mistrial, then the doubt will be resolved in favor of the accused and double jeopardy shall prohibit retrial. *Commonwealth v. Bartolomucci*, 468 Pa. 338, 362 A.2d 234 (1976). *Id.*, 244 Pa.Super. at 180, 366 A.2d at 1251.

Here the record does not support the court's *sua sponte* declaration of a mistrial. As mentioned above, appellant was absent when the court reconvened at 9:00 a. m. on Monday morning, and at 10:45 a. m. the court declared a mistrial. In acting so promptly the court did not allow time for a thorough inquiry into the reason for appellant's absence or for a determination of his whereabouts.[10] Given appellant's "valued right to continue with the chosen jury", *Crist v. Bretz, supra,* the court should have waited at least a little longer by adjourning, for example, to the lunch hour, with a direction to appellant's counsel to find out where appellant was. Especially is this so given the fact that no request for a mistrial had been made by the district attorney. *Cf. Commonwealth v. Ferguson*, 446 Pa. 24, 29, 285 A.2d 189, 191 (1971) ("court could even have sent the jury home early for the day until more was known about [essential witness's] health"). That such an effort would have proved fruitful is shown by the fact that indeed the police were able to find appellant and take him into custody before noon.[11]

10. Further, even assuming the worst, *i. e.*, that appellant's absence was without cause, Pa.R.Crim.P. 1117(a) specifically provides that [t]he defendant's absence without cause shall not preclude proceeding with the trial including the return of the verdict.

11. As mentioned in footnotes 5 and 6, *supra*, appellant in his motion to quash and in his offer of proof alleged that his absence when trial reconvened was due to illness and that the district attorney's office had been informed of this. We do not know whether appellant would have been able to prove these allegations, for a hearing was never held, the lower court being of the opinion that a hearing was unnecessary. Thus the lower court says in its opinion:

Our determination that "manifest necessity" did not exist here is in accord with our decision in *Commonwealth v. Stroup, supra.* In *Stroup,* when the trial court reconvened at 1:30 p. m. for the afternoon session, trial counsel was absent.

"[U]pon inquiry being made, the Court was advised that Mr. Woodcock, counsel for the defendant, was engaged in the presentation of a matter in Courtroom No. 2, and upon inquiry by this Court through a tipstaff of the Court, and as testified to in this matter by Mr. Woodcock, the Court was advised that Mr. Woodcock would be available 'as soon as this is over. I will be over', referring to the proceeding that had apparently been inaugurated in Courtroom 2 during the noon recess of this Court. [T]he Court had no notice or knowledge of the facts involved, the parties involved, or any other matters relative to the

> In this case, the trial judge decided that the ends of substantial justice would be best attained if [appellant] were given the opportunity to appear at his trial, and that justice would not be served by continuing the trial in [appellant's] absence. The Court was justified in so deciding even if the Court heard unsupported allegations that [appellant] would arrive in an hour or so, as the Court was certainly not obligated to believe this information. Slip Opinion at 5.

One difficulty with this statement is that it refers only to the conduct of the court at appellant's first trial and does not consider the lower court's later refusal to hold a hearing in response to appellant's *motion to quash and offer of proof.* Given the offer to prove that appellant had been taken to the hospital, the lower court should have held a hearing to determine whether there was credible testimony in support of the offer. *Cf. Commonwealth v. Ferguson, supra; Commonwealth v. Stroup, supra.* Perhaps more important is the lower court's refusal to hold a hearing to determine the truth of appellant's allegation that the district attorney's office was informed of appellant's whereabouts but failed to inform the court. We note that it is not alleged that the district attorney himself was notified but that someone "in the Law Library" who "answered the phone on behalf of the D.A." was. *See* footnote 6, *supra.* Depending on who this someone was, a question might be raised of whether the failure to inform the court was such that jeopardy attached. *See United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). However, in light of our determination that the trial court erred in declaring a mistrial *sua sponte* without making further inquiry as to appellant's absence it is unnecessary to remand for a hearing to resolve the truth of appellant's allegations.

case that intervened in Courtroom No. 2 and neither counsel for the defendant nor any other person brought to the attention of the Court the type and nature of proceeding there involved . . ." *Id.,* 244 Pa.Super. at 177, 366 A.2d at 1249, (quoting lower court opinion)

After "study of [these] facts" we concluded that

> it was not in the interests of public justice or manifest necessity to have declared a mistrial. Counsel for appellant was absent from the afternoon call of this case. He was attending to court matters in the same Court of Common Pleas, merely across the hall from appellant's courtroom. There is nothing in the record to indicate that his absence was to be for a prolonged period or that he was detained on other than temporary matters in pending cases. The transcript does not indicate a thorough inquiry by trial court into the reasons for and possible length of his absence. This lack of inquiry is particularly prejudicial in light of the fact that the lower court permitted the trial to continue with the Commonwealth's case when both the assistant district attorney and appellant himself expressed a desire to wait until defense counsel should return. We believe that before manifest necessity would arise such an inquiry should have been made. We also find that the interests of justice were not subverted when the length of counsel's delay had not been more definitely ascertained. *Id.,* 244 Pa.Super. at 181, 366 A.2d at 1252.

Here the trial court had received no information regarding appellant's whereabouts. However, by declaring a mistrial so quickly (and without any information) the trial court could only have speculated regarding the existence of "manifest necessity". This was improper:

> [i]n making this inquiry " '. . . the pivotal question [is] whether the trial court properly exercised its discretion in finding . . . manifest necessity.' " . . . But any doubt regarding the propriety of the exercise of discretion and thus about the necessity for the mistrial must be resolved in favor of the accused. . . . *Commonwealth v. Bartolomucci,* 468 Pa. at 347, 362 A.2d at 239. (citations omitted)

Here it must be acknowledged that doubt as to the presence of manifest necessity does exist.

Accordingly, the judgment of sentence is vacated, and appellant is ordered discharged.

PRICE, J., files a dissenting statement in which VAN der VOORT, J., joins.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

PRICE, Judge, dissenting:

I concur in sections 1, 2 and 3 of the majority opinion. I dissent to section 4 (p. ——) and would hold that manifest necessity is clear upon this record.

I would affirm the judgment of sentence.

VAN der VOORT, J., joins in this dissenting statement.