382 A.2d 1205

COMMONWEALTH of Pennsylvania

v.

William WHITE, Appellant (two cases).

Supreme Court of Pennsylvania.

Argued Jan. 21, 1977.
Decided Jan. 26, 1978.

Walter T. Darmopray, C. F. Stouffer, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Chief, Appeals Div., Marianne E. Cox, Asst. Dist. Attys., for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant William White was convicted by a jury of murder of the second degree, robbery and various weapons offenses in connection with the November 22, 1974 shooting of Walter Robinson and robbery of the Voo-Den Bar. This conviction followed a mistrial caused by the failure of the jury to reach a verdict at a previous trial on charges arising out of the same criminal transaction. Post-verdict motions were denied, and ·appellant was sentenced to life imprisonment. Appellant asserts that he was subject to double jeopardy when tried again following the mistrial, that counsel was ineffective for failing to raise a double jeopardy

claim at appellant's second trial, that the trial court at the first trial erred in its instruction to the jury on criminal homicide, and that trial counsel was ineffective for failing to object to the allegedly defective jury instructions.* We affirm.

## I

On November 22, 1974, appellant, identified by several witnesses, entered the Voo-Den Bar in Philadelphia. About ten minutes later, appellant pulled a gun out of his pocket and announced a holdup. The bartender, Robert Hicks, and the barmaid, Marcella Williams, both of whom knew appellant, regarded the announcement as a joke and refused to cooperate with appellant's demand for money. According to Hicks and Williams, appellant stated, "I am not joking, this is really a holdup . . ." and pointed the gun at Walter Robinson, who was standing a few feet away. Robinson begged appellant not to shoot, but appellant fired, fatally wounding Robinson. Appellant threatened to leave "three dead bodies" in the bar, and fired several times at Hicks, but the gun failed to discharge. Michael Hurd, a patron of the bar, gathered up the bar's evening receipts and persuaded appellant to leave with him. Appellant was arrested a few hours later and subsequently charged with murder and several other crimes arising out of the incident.

At trial, appellant admitted that he had entered the bar and had been holding a gun, but denied attempting to rob the bar. He claimed that earlier in the day he had asked Williams, the barmaid, to keep his gun for him and that he returned that night to retrieve the weapon; while he was placing the gun in his pocket, Hurd, who according to

* We hear this appeal from the judgment of sentence on the conviction of murder of the second degree pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1977). Failure of the Commonwealth to object to jurisdiction of this Court over the appeals from judgments of sentence on the other convictions perfects our jurisdiction under the Act, art. II, § 503(a), 17 P.S. § 503(a). *Commonwealth v. London*, 461 Pa. 566, 337 A.2d 549 (1975).

appellant was intoxicated, grabbed appellant's arm, causing the gun to fire the shot which killed Robinson.

At the conclusion of trial, the court instructed the jury on murder of the first, second, and third degree, voluntary manslaughter, robbery, assault, various weapons offenses and the defense of accidental homicide. The court did not instruct the jury on involuntary manslaughter, and appellant's court appointed counsel did not request such an instruction. After three days of deliberation, the jury reported that it was deadlocked. The court then declared a mistrial. Appellant was retried for the killing of Robinson and for related offenses. At his second trial, a jury convicted him of murder of the second degree, robbery, assault and possession of an instrument of crime. After post-verdict motions were filed and denied, appellant was sentenced to life imprisonment on the murder conviction and to a ten to twenty year concurrent term on the robbery conviction. He was not sentenced on the other charges.

II

Appellant argues that he was subject to double jeopardy in violation of the Sixth Amendment of the Constitution of the United States when he was tried again on charges arising out of the incident at the Voo-Den Bar. As appellant admits, this issue was not properly presented to the trial court. Consequently, the issue has not been preserved for appellate review. E. g., *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

Appellant, represented on this appeal by counsel other than trial counsel, see *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975), asserts that trial counsel was ineffective for failing to raise a claim of double jeopardy at the second trial. We do not agree.

The claim appellant asserts counsel should have made arises from the mistrial declared when the jury was unable to reach a verdict at the first trial. After retiring to deliberate, the jury at the first trial sent a series of notes to the court requesting further instructions. In at least five of

the notes, the jury stated that it could not reach a verdict. After receiving the eighth note, the court recalled the jury, which had then been deliberating for approximately 30 hours over three days.

"THE COURT: Ladies and gentlemen of the jury, I have received your note. . . . The note says 'Positively deadlocked.' Now, I will ask you right here in open court, I will ask the forelady to stand. Is there any possibility that further deliberations would resolve your differences? Or do you feel that regardless how much more deliberations, you're deadlocked and you cannot resolve your differences?

JUROR NUMBER TWELVE: Your honor, it has been unanimous among the jury that we have deliberated and deliberated and deliberated and we just can't seem to come to an understanding. . . .

THE COURT: Do you feel that further deliberations would be of any value and would possibly result in a decision? Or do you feel that you've reached the point where you feel satisfied that further deliberations would not help any further, that a deadlock would be made?

JUROR NUMBER TWELVE: It was unanimous among the jury, we can't deliberate any further to any satisfaction.

THE COURT: You don't think you'll reach an agreement, is that what you're saying?

JUROR NUMBER TWELVE: That's right.

THE COURT: No matter how long you keep on deliberating?

JUROR NUMBER TWELVE: This is the understanding I got from the jury, Your Honor."

Despite these unequivocal assurances that the jury was deadlocked, the court sent the jurors out of the courtroom so that they could try once more to reach a verdict. Defense counsel then informed the court that he did not wish to move for declaration of a mistrial. When the jury returned, the court asked if there had been any change:

356

"JUROR NUMBER FIVE: [The minority will] not accept the law as we have accepted it, and these jurors will not accept it. We cannot change them and we cannot come to a verdict.

THE COURT: So that there has been no change then from what has been said before?

JUROR NUMBER FIVE: No.

THE COURT: No further deliberation would change that?

JUROR NUMBER FIVE: No, it will not, because we've tried for two days the same issue and we are constantly running into the same thing with the same jurors."
The court then declared a mistrial, noting that although both appellant and the Commonwealth preferred prolonging the deliberations, there was no point in continuing.

■ A defendant may be retried without violation of his right not to be placed twice in jeopardy if his first trial concluded without a verdict for reasons of "manifest necessity." *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). At the time of appellant's second trial, this Court had held that manifest necessity for a retrial exists when there is no reasonable probability that the jury will agree upon a verdict. *Commonwealth v. Monte*, 459 Pa. 495, 329 A.2d 836 (1975); *Commonwealth v. Brown*, 451 Pa. 395, 301 A.2d 876 (1973) (plurality opinion); accord, American Bar Association Standard Relating to Trial by Jury § 5.4(c) (Approved Draft, 1968); see generally S. Schulhofer, Jeopardy and Mistrials, 125 U.Pa.L.Rev. 449, 486, 522 (1977). In *Monte*, this Court held that a defendant could be tried again following a mistrial declared where the jury was unable to reach a verdict after six and one-half hours of deliberation. In *Brown*, we upheld a retrial following a mistrial declared when the jury deliberated for 24 hours over three days without reaching a verdict and three of the jurors required medical attention.

■ Counsel is not ineffective if his decisions appear to have any reasonable basis. E. g., *Commonwealth ex rel.*

*Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Trial counsel here may well have considered that these holdings, coupled with the rule that "The length of the deliberation of a jury is wisely left to the sound discretion of the trial Judge," *Commonwealth v. Monte*, supra, 459 Pa. at 504, 329 A.2d at 840, precluded any reasonable possibility that a claim of double jeopardy would be sustained. The jury in appellant's first trial had deliberated for approximately 30 hours over three days, repeatedly informing the court that it was hopelessly deadlocked. Finally, the court interrogated two members of the jury at length to determine whether the deadlock could be snapped, and declared a mistrial only after a second colloquy confirmed the intractable division among the jurors. In these circumstances, dismissal of the charges against appellant upon a double jeopardy claim would almost certainly have been denied; appellant's trial counsel cannot be faulted for refusing to undertake an apparently useless task. *Commonwealth v. Nole*, 461 Pa. 314, 320, 321, 336 A.2d 302, 305, 306 (1975); *Commonwealth v. Boyd*, 461 Pa. 17, 30, 334 A.2d 610, 617 (1975). Accordingly, we find that counsel's course of action had a reasonable basis. *Commonwealth ex rel. Washington v. Maroney*, supra.

■ Appellant also contends that the trial court at the first trial erred in failing to instruct the jury on involuntary manslaughter. Appellant attributes the jury's inability to reach a verdict to the court's allegedly erroneous instructions. Because counsel failed to object to the jury instruction at trial, this issue has not been preserved for appellate review. E. g., *Commonwealth v. Clair*, supra.

■ Finally, appellant alleges that trial counsel was ineffective at the first trial for failing to object to the court's instruction. We need not resolve this claim, however, for even if appellant did receive ineffective assistance of counsel in this respect, he was not thereby prejudiced. Assuming appellant's counsel should have requested an instruction on involuntary manslaughter, the greatest relief to which appellant would be entitled would be a new trial. See *Com-*

*monwealth v. Moore,* 466 Pa. 510, 517, 353 A.2d 808, 811 (1976); *Commonwealth v. Twiggs,* 460 Pa. 105, 111, 331 A.2d 440, 443 (1975). Appellant has already received a second trial, at which the court instructed the jury on both voluntary and involuntary manslaughter. Thus, appellant has been awarded all the relief available for a meritorious claim.

Judgments of sentence affirmed.

JONES, former C. J., did not participate in the consideration or decision of this case.

NIX, J., did not participate in the consideration or decision of this case.

MANDERINO, J., concurs in the result.