576 A.2d 1092

**COMMONWEALTH of Pennsylvania**

v.

**James Edward BALOG, Appellant.**

Superior Court of Pennsylvania.

Argued March 21, 1990.

Filed June 19, 1990.

William E. Duffield, Uniontown, for appellant.

Before CAVANAUGH, DEL SOLE and HUDOCK, JJ.

DEL SOLE, Judge:

In this case we are asked to decide whether the trial court abused its discretion when it ordered a mistrial, over defense counsel's objections, as a result of Appellant/Defendant's statement that his co-conspirator had been found not guilty in an earlier trial. Because we find that there was no "manifest necessity" to order a mistrial, we reverse the trial court's denial of Appellant's motion to dismiss, and order the instant action dismissed on the basis that Appellant's re-prosecution would violate the Double Jeopardy provisions of the United States and Pennsylvania Constitutions. *Commonwealth v. Gains*, 383 Pa.Super. 208, 556 A.2d 870, 876 (1989).

Appellant, James Edward Balog, was charged with rape, corruption of minors, involuntary deviate sexual intercourse, indecent assault, and criminal conspiracy to commit these crimes. An alleged accomplice, Charles Belch, was charged with the same offenses. At his earlier, separate trial, a jury convicted Mr. Belch of corruption of minors and acquitted him of the other offenses.

Mr. Balog testified at trial that he had just briefly met the alleged victim, Marlene Hackney, at Charles Belch's house during a New Year's Eve party. He also stated that he had attended several other parties that evening where he had been drinking heavily, and then returned to Mr. Belch's house where he fell asleep on the couch. On cross-examination he was asked about certain inconsistencies between this account of his activities and a prior statement he made to State Trooper Fuller. Assistant District Attorney Heneks asked:

Q. (By Mr. Heneks) Now, Mr. Balog, again I will ask you the question, did Trooper Fuller ask you anything in regard to Marlene Hackney?

A. I don't believe he did. He jsut [sic] said that she made some allegations.

Q. And in response to that, did you tell him that you don't recall messeing [sic] with the girl?

A. I told him I don't recall.

Q. That's right.

A. That's what I told him.

Q. Well, isn't that, in fact, a different statement that I don't recall messing with the girl?

A. I can't tell you exactly what I told him on that day.

Q. But you're not quarreling with Trooper Fuller putting that information down that you don't recall messing with the girl?

A. He could have put down anything that he wanted.

Q. And are you saying that you said that?

A. I don't recall what I said. It has been 15 or 16 months ago.

Q. But if I understand, you are not really denying that either?

A. Of course, I am denying it. I didn't say I did anything with her. Charlie was not guilty; why should I be found guilty? (N.T. May 4, 1989 at 287–288).

At this point the Commonwealth moved for a mistrial, and the defense objected stating that to a declare a mistrial

at this time would be highly prejudicial to the defendant, and that the statement was just a spontaneous response from a layman who was not familiar with trial procedure. Nevertheless, the court ruled that the statement that Charles Belch was not guilty was highly prejudicial to the Commonwealth and granted a mistrial.

Following the discharge of the jury, Appellant moved for dismissal of the information claiming that the trial judge abused his discretion in granting a mistrial, and alternatively, that the conspiracy charges against the Appellant should be dismissed because of the acquittal of the alleged co-conspirator on the same charges. The trial court denied this motion holding that there was manifest necessity to grant the mistrial. It stated, "for defendant to blurt out that since Belch was not guilty why should he be found guilty was certainly prejudicial to the Commonwealth". (*Opinion and Order*, July 10, 1989 at 5).

Pennsylvania Rule of Criminal Procedure 1118(b) provides that:

> When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity.

Since Justice Story's 1824 opinion in *United States v. Perez*, 9 Wheat. 579, 580, 6 L.Ed. 165, it has been well settled that the question whether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on where there is a manifest necessity for the mistrial, or the ends of public justice would otherwise be defeated. *Commonwealth v. Bartolomucci,* 468 Pa. 338, 362 A.2d 234 (1976). "Where the judge, acting without the defendant's consent aborts the proceeding, the defendant has been deprived of his valued right to have his trial completed by a particular tribunal." *United States v. Jorn,* 400 U.S. 470, 484, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971).

 Reprosecution and the subjection of an individual to the hazard of trial and possible conviction more than once for an alleged offense, is only "grudgingly allowed." *United States v. Wilson*, 420 U.S. 332, 343, 95 S.Ct. 1013, 1022, 43 L.Ed.2d 232 (1975), cited in *Commonwealth v. Williams*, 373 Pa.Super. 270, 541 A.2d 7 (1988). "The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the state with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense." *Id.* at 273, 541 A.2d 7, *citing, Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). In determining whether the circumstances surrounding the declaration of a mistrial constitute manifest necessity, we apply the standards established by both Pennsylvania and federal decisions. *Commonwealth v. Mitchell*, 488 Pa. 75, 410 A.2d 1232 (1980).

 The *Perez* doctrine of manifest necessity stands as a command to trial judges not to declare a mistrial without the defendant's consent until a scrupulous exercise of judicial discretion leads to the conclusion that a termination of the trial is manifestly necessary. *United States v. Jorn, supra*, 91 S.Ct. at 557. Failure to consider if there are less drastic alternatives to a mistrial creates doubt about the propriety of the exercise of the trial judge's discretion and is grounds for barring retrial because it indicates that the court failed to properly consider the defendant's significant interest in whether or not to take the case from the jury. *Commonwealth ex rel. Walton v. Aytch*, 466 Pa. 172, 352 A.2d 4 (1976).

 It is well established that any doubt relative to the existence of manifest necessity should be resolved in favor of the defendant. *Bartolomucci, supra*, 468 Pa. at 347, 362 A.2d 234; *Commonwealth v. Bradley*, 311 Pa.Super. 330, 457 A.2d 911 (1983). Therefore, the failure of the court to consider less drastic alternatives before declaring a mistrial, which we have said creates doubt about the propriety

of the exercise of the trial judge's discretion, may bar retrial because of double jeopardy protections.

▮ Our supreme court has intentionally avoided establishing a catalog of situations in which a mistrial is dictated by manifest necessity, and has instead stated that each case must "turn on the particular facts". *Commonwealth v. Bolden*, 472 Pa. 602, 638, 373 A.2d 90, 107 (1977). However, there are certain circumstances in which the courts commonly grant a mistrial for manifest necessity. The illness of the presiding judge which is expected to delay trial for a significant period (two weeks or more), is one of those circumstances, *Commonwealth v. Robson*, 461 Pa. 615, 337 A.2d 573, *cert. denied*, 423 U.S. 934, 96 S.Ct. 290, 46 L.Ed.2d 265 (1975); *Commonwealth v. Manley*, 252 Pa.Super. 77, 380 A.2d 1290, *vacated on other grounds*, 491 Pa. 461, 421 A.2d 636 (1977). However, the most frequently encountered circumstance constituting manifest necessity, and thus justifying discharging a jury without placing the defendant twice in jeopardy, is the inability of the jury to agree on a verdict such that the jury is hopelessly deadlocked. *Commonwealth v. Kivlin*, 267 Pa.Super. 270, 406 A.2d 799 (1979); *Commonwealth v. White*, 476 Pa. 350, 382 A.2d 1205 (1978); *Commonwealth v. Mehmeti*, 501 Pa. 589, 462 A.2d 657 (1983); *Commonwealth v. Williams*, 373 Pa.Super. 270, 273, 541 A.2d 7 (1988); 21 Am.Jur.2d *Criminal Law* § 194 et seq. (1965). In such cases a mistrial is the natural result of the practical inability of the original tribunal to complete the trial.

▮ Nevertheless, if there is any doubt that a deadlocked jury exists, then manifest necessity for a mistrial is not present. Thus, in *Bartolomucci, supra,* 468 Pa. at 348, 362 A.2d 234, where the trial court failed to inquire directly of the jury, either individually or through the foreman, about its inability to agree, our supreme court held that the declaration of a mistrial was an improper exercise of discretion. Such an inquiry would have provided greater certainty about the hopelessness of breaking that deadlock, or the possibility of overcoming the impasse by further delibera-

tions, and therefore the necessity for the mistrial was open to doubt.

In other cases where findings of manifest necessity were predicated upon an uncorroborated and therefore doubtful assertion that a Commonwealth witness was ill, our courts have ruled that the trial court did not have the facts to justify subjecting appellants to the continuing ordeal of a pending trial. *Commonwealth v. Ferguson*, 446 Pa. 24, 285 A.2d 189 (1971); *Commonwealth v. Dull*, 257 Pa.Super. 192, 390 A.2d 777 (1978).

Similarly, the existence of doubts about whether it was necessary to terminate a trial when a juror was released from sequestration, resulted in a holding that the declaration of a mistrial was not manifestly necessary. *Walton v. Aytch, supra,* 466 Pa. at 182, 352 A.2d 4. In this case, during the course of the trial, the trial judge decided that the jury had to be sequestered because of the surrounding publicity. Two of the jurors asked to be excused because of the hardship this would cause, with the result that there were no alternate jurors available. Subsequently, the judge was informed that one of the twelve remaining jurors was very distressed because she had been unable to find a baby-sitter for her children. As a result, without consulting either counsel, the trial judge allowed the juror to go home without requesting her to return the next day, and the trial was aborted.

Our Supreme Court ruled in *Aytch* that the propriety of the declaration of a mistrial was not free from doubt. The trial court could have at least attempted to contact counsel, particularly the defense counsel, to see if they had any suggestions about what to do in this situation. This would have indicated that the decision to terminate the trial was tempered by a consideration of the defendant's interest in having his trial concluded by the tribunal in which it was initiated. Furthermore, the court failed to consider the less drastic alternatives of sending a court officer with the juror to maintain the sequestration, or lifting the sequestration order. *Id.,* 466 Pa. at 181, 352 A.2d 4.

When a trial court acts too hastily and fails to consider reasonable alternatives to a mistrial, the United States Supreme Court and the Pennsylvania Appellate Courts have reached the same conclusion, that retrial would violate Double Jeopardy Rights. In *Commonwealth v. Bradley*, 311 Pa.Super. 330, 457 A.2d 911 (1983), we ruled that the trial court's hasty decision to grant a mistrial based on evidence that a private conversation had taken place between defense counsel and a Commonwealth witness during lunch recess, which interrupted the witness' direct testimony, constituted an abuse of discretion. The trial court failed to consider the less drastic alternative of allowing defense counsel to cross-examine the witness about the substance of the conversation, and the context in which certain ambiguous statements were made.

In *Jorn, supra*, 91 S.Ct. at 558, the Supreme Court ruled that the trial judge abused his discretion in discharging the jury when, despite assurances by both the first witness and prosecuting attorney that the five taxpayers involved in the litigation had all been warned of their constitutional rights, the judge refused to permit them to testify. The judge was unwilling to listen to the prosecutor's explanation, cutting him off in midstream, and acted so abruptly in discharging the jury, that had counsel been disposed to suggest a reasonable alternative, such as a granting a continuance, there would have been no opportunity to do so. The trial court's failure to scrupulously exercise its discretion when ordering a mistrial, led the Court to conclude that reprosecution would subject the defendant to double jeopardy.

Finally, in *Commonwealth v. Hatten*, 344 Pa.Super. 362, 496 A.2d 837 (1985), we held that a prosecutor's disclosure in a joint trial of defendant and her co-defendant, that co-defendant had threatened the complaining witness, did not justify a declaration of a mistrial, when the mistrial was requested only by the co-defendant and the defendant requested a severance of the two cases in order to proceed with the trial. Apart from failing to consider the alternatives to declaring a mistrial, this court noted that disclosure

of the defendant's threat would not have necessarily required reversal on appeal had appellant been convicted. Therefore, it was held that a mistrial was not manifestly necessary, and the trial court should have severed the two cases.

Applying the principles derived from the preceding cases to the facts in this case, we must conclude that the trial judge abused his discretion in declaring a mistrial and discharging the jury. The trial court admits that the defendant "blurted out" that his co-conspirator was found not guilty under the pressure of cross-examination, and therefore, although it was Appellant's conduct which caused the court's actions, it was not intentional conduct designed to provoke a mistrial and then a dismissal for reasons of double jeopardy. *Cf., Commonwealth v. Wilson,* 257 Pa. Super. 329, 390 A.2d 847 (1978).

We believe that our focus on intentional conduct designed to provoke a mistrial is justified by reference to the case law concerning mistrials granted on the motion of the defendant. When a defendant moves for a mistrial the request ordinarily is assumed to remove any barrier to reprosecution, even when the defendant's motion results from prosecutorial or judicial error. *Commonwealth v. Bolden,* 472 Pa. 602, 638, 373 A.2d 90, 107 (1977); *Commonwealth v. Hunter,* 381 Pa.Super. 499, 554 A.2d 112 (1989). However, when the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial, then retrial is barred. *Commonwealth v. Simons,* 514 Pa. 10, 522 A.2d 537 (1987). Thus, if the defendant moves for a mistrial because of intentional prosecutorial misconduct designed to provoke a mistrial in order to secure a more favorable opportunity to convict, then retrial is barred. Similarly, if the conduct of a defense witness is intentionally designed to provoke a successful mistrial request by the Commonwealth in order to secure a more favorable outcome, then retrial is not barred.

Here, there is no evidence of intentional conduct. Mr. Balog was under pressure, and blurted out his statement. As a layperson, he did not know the rules of evidence, and did not know he was not allowed to refer to the outcome of different, though related, trial.

Furthermore, we can not agree with the trial court's holding that Mr. Balog's statement was certainly prejudicial. (Trial Court Opinion at 5, July 10, 1989). Although, there are no cases discussing the prejudicial effect of a defense witness revealing that a co-conspirator had been acquitted, (all such appeals by the Commonwealth would be barred by double jeopardy), there is some case law discussing the prejudicial effect of revealing that a co-conspirator had been convicted. In *Commonwealth v. Howard*, 375 Pa.Super. 43, 543 A.2d 1169 (1988), this court held that repeated references by the prosecution during closing argument to the fact that a co-conspirator had been convicted on the same evidence by another jury, did not warrant a new trial. Therefore, since this more egregious and intentional series of references to a co-conspirator's prior conviction is not *per se* reversible error, requiring a new trial, it would seem logical that reference to a co-conspirator's prior acquittal does not *per se* require a mistrial.[1] As in *Hatten, supra,* the fact that the defendant's error would not necessarily warrant reversal upon appeal, is further evidence that the declaration of a mistrial was not manifestly necessary.

Most importantly, however, the trial court's failure to consider the less drastic alternative of curative instructions shows that the court did not adequately consider the importance to the defendant of being able, once and for all, to have his trial completed by a particular tribunal. *Jorn,*

1. In *Howard,* two members of the panel concluded that the prosecutor's invitation to the jury to find the defendant guilty on the same evidence which another jury found sufficient to convict a co-conspirator was improper, even though the conviction was first brought out by the defense. *Howard, supra,* 375 Pa.Super. at 63, 543 A.2d 1169, (Kelly, J., concurring), and 375 Pa.Super. at 65, 543 A.2d 1169, (Wieand, J., dissenting).

*supra,* 400 U.S. at 484, 91 S.Ct. at 557. This court has stated that a court should not presume the likelihood of prejudice and dismiss a prospective juror for cause, when that juror is aware, through pre-trial publicity, of a previous mistrial. *Commonwealth v. Hashem,* 363 Pa.Super. 111, 525 A.2d 744 (1987). Analogously, a trial court may not presume that a jury will disregard judicial instructions admonishing them to disregard improper evidence of a previous acquittal of a co-conspirator.

Failure to consider alternatives before declaring a mistrial raises doubt as to the existence of manifest necessity to terminate the trial. This doubt must be resolved in favor of Appellant who opposed such a declaration. Therefore we hold that the trial court abused its discretion in declaring a mistrial, and we grant Appellant's motion to dismiss this case. We need not consider Appellant's claim that the criminal conspiracy charges be dismissed because of our disposition of this case.

This action is dismissed, as retrial would be violative of Appellant's rights under the Double Jeopardy Clause of the United States and Pennsylvania Constitutions. Jurisdiction relinquished.

HUDOCK, Judge, files a dissenting opinion.

HUDOCK, Judge, dissenting.

Respectfully, I must dissent. While I share the majority's reverence for the Double Jeopardy Clause and fully understand its historical basis, I do not believe that when a defendant himself frustrates the quest for truth, which is what a trial is supposed to be, he should be rewarded by discharge. I believe that appellant's conduct here, whether designed to do so or not, so skewed the truth seeking process that manifest necessity for a mistrial existed.

In *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) the U.S. Supreme Court held that where *defense counsel* made improper and prejudicial comments

during his opening statement, a mistrial was properly declared and retrial not barred. The Court stated:

Unlike the situation in which the trial has ended in an acquittal or conviction, retrial is not automatically barred when a criminal proceeding is terminated without resolving the merits of the charges against the accused. Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury ... the prosecutor must demonstrate "manifest necessity" for the mistrial declared over the objection of the defendant.

*Id.* at 505, 98 S.Ct. at 830, 54 L.Ed.2d at 728.

The Court went on to state that the words "manifest necessity" do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge, and that the word "necessity" cannot be interpreted literally. Rather, a "high degree" of necessity is required before a mistrial could be appropriate over defendant's objection.

The Court further noted that the difficulty which led to the mistrial in that case "falls in an area where the trial judge's determination is entitled to special respect". *Id.* at 510, 98 S.Ct. at 833, 54 L.Ed.2d at 731.

The majority points out that there were other alternatives open to the trial judge, such as a curative instruction. The Supreme Court in *Arizona v. Washington, supra,* recognized that some trial judges may have proceeded with the trial after giving the jury appropriate cautionary instructions, but the court refused to hold that the availability of such an alternative precluded a mistrial being declared on the grounds of "manifest necessity". The court reiterated that in a literal sense the mistrial was not "necessary" but that "the overriding interest in the evenhanded administra-

tion of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment [of defense counsel]". *Id.* at 511, 98 S.Ct. at 833, 54 L.Ed.2d at 732.

In the case *sub judice*, the entire record must be read to appreciate the seriousness of defendant's unsolicited comment that "... Charlie was not guilty. Why should I be found guilty?" The trial court's opinion and the majority opinion here set forth only twenty or so lines of the transcript of trial testimony preceding the challenged remarks. In that context, I agree that the remark is ambiguous, if not meaningless, for the identity of "Charlie" and his connection to the case is not made known. However, after reading the entire record, it becomes abundantly clear who "Charlie" is—he is the conspirator about whom the victim testifies at great length and in graphic detail. She tells how "Charlie" held her while appellant raped and sodomized her and how appellant held her while "Charlie" did the same. No juror could have heard this, and testimony about "Charlie" from other witnesses, without knowing that appellant was advising them of the fact that "Charlie" had been acquitted of these charges. This is especially prejudicial since "Charlie" testified he had consensual sex with the victim on the evening in question. Under these circumstances, I would give great deference to the trial judge who "saw and heard the jurors during their *voir dire* examination", who is "most familiar" with the evidence and background of the case", who has "listened to the tone of the argument" and has "observed the apparent reaction of the jurors", and who is far more "conversant with the factors relevant to the determination than any reviewing court can possibly be". *Id.* at 513–514, 98 S.Ct. at 834–835, 54 L.Ed.2d at 733.

Of course, as *Arizona v. Washington* instructs, paying great deference to a trial court's decision to grant a mistrial does not mean that his decision is beyond being questioned. He still must exercise "sound discretion" in declaring a

mistrial, recognizing " 'the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.' " *Id.* at 514, 98 S.Ct. at 835, 54 L.Ed.2d at 733, *quoting, United States v. Jorn,* 400 U.S. 470, 486, 91 S.Ct. 547, 558, 27 L.Ed.2d 543 (1971).

Here the court considered arguments from both counsel before making its decision. In its opinion in support of the order denying defendant's motion to dismiss, the court set forth the reasons for its decision. It believed that the prosecutor had not provoked or in any way suggested the making of the statement by defendant, and that the statement was highly prejudicial to the Commonwealth. The court further noted that "even with curative instructions from the court, the fact than an alleged accomplice/co-conspirator was found not guilty could not be erased from the jurors' minds". Thus it is clear that the court did consider and reject the only alternative to a mistrial under the facts presented, a curative instruction. While the court did not take an evening to ponder and research the matter as the trial court did in *Arizona v. Washington, supra,* it did not need that amount of time to consider the only realistic option available.

The majority cites *Commonwealth v. Howard,* 375 Pa.Super. 43, 543 A.2d 1169 (1988) for the proposition that reference by the prosecution to the prior conviction of one of four co-conspirators did not warrant a new trial. From that the majority reasons that reference to a co-conspirator's prior acquittal, therefore, does not *per se* require a mistrial. I do not believe that conclusion is warranted. The facts of *Commonwealth v. Howard* were that *defense* counsel injected the fact that the co-conspirator had been convicted, and that, he having thus opened the door, the prosecutor was free to refer to that fact also. The case does not stand for the proposition that a prosecutor may under all circumstances refer to the conviction of a co-conspirator without prejudicing the defendant at trial.

I would hold that since appellant himself poisoned the waters of truth, he should not benefit from his wrongdoing. Neither party has a right to have his case decided by a jury which may be tainted by bias; [footnote omitted] in these circumstances, "the public's interest in fair trials designed to end in just judgments" [citation omitted] must prevail over the defendant's "valued right" to have his trial concluded before the first jury impaneled. *Arizona v. Washington*, 434 U.S. at 516, 98 S.Ct. at 835–836, 54 L.Ed.2d. at 734–735.

The trial court here properly declared a mistrial for reasons of manifest necessity, and, accordingly, I dissent.