## Commonwealth v. Burdette

C.P. of Berks County, no. 1859/99.

*Brian G. McDonnell, assistant district attorney,* for the Commonwealth.

*Jeanne M. Trivellini,* for defendant.

KELLER, *P.J.,* March 14, 2000—On November 12, 1999, the defendant/appellant, Gilbert Burdette, was brought to trial before a jury. Later that day, due to the defendant's substantial intoxication, a mistrial was declared.

On January 18, 2000, defendant motioned to dismiss all charges due to violation of the constitutional prohibitions against double jeopardy. We denied this motion the same day.

Defendant was again tried before a jury on February 8, 2000. This time, the defendant was found guilty of receiving stolen property and conspiracy to commit receiving stolen property.[1] On February 10, 2000, this court sentenced the defendant to nine to 18 months incarceration with a credit of 103 days for time served. Defendant was represented throughout these proceedings by Abby L. Wertzberger and Dominic A. DeCecco, Esquires.

Defendant filed a notice of appeal to the Superior Court of Pennsylvania on February 10, 2000. We requested and subsequently received a 1925(b) concise statement of matters complained of on appeal. In said statement, defendant raises the following issues:

"(1) Whether the trial court erred in denying a defense motion to dismiss on double jeopardy grounds when a mistrial had been previously declared sua sponte by the court over the objection of defense counsel. No alternatives to mistrial were considered on the record and manifest necessity did not exist.

---

1. Namely 18 Pa.C.S. §3925(a) and §903(a)(1), (2).

"(2) Whether the evidence was insufficient to support the verdict of guilty on Count two and Count four of the information. The defendant was found not guilty of theft of immovable property, so that the jury must have found that the Commonwealth did not prove that defendant detached the items from realty. No independent evidence was introduced that such items were stolen at any time or that the defendant knew or should have known the items were stolen at the time he took possession of them."

This opinion is written in response to said concise statement.

In respect to defendant's first issue, we believe it useful to review the facts that led up to the November 12, 1999 mistrial:

On said morning, defendant's counsel, Abby L. Wertzberger, Esquire, requested a conference with this court and the district attorney in our retiring room. At this time, defense counsel informed the court that she had noticed the distinct odor of alcohol on the defendant's breath. (N.T., mistrial, 11/12/99, p. 4.) Defendant had apparently admitted having alcohol to his counsel and further informed her that he had been out until 1 a.m. the previous night drinking beer. (N.T., mistrial, 11/12/99, p. 4.) Ms. Wertzberger further stated to the court that based on her conversations with the defendant that she believed him to be sufficiently sober to participate in his trial. (N.T., mistrial, 11/12/99, p. 5.)

All parties then returned to the courtroom, where this court conducted a colloquy of the defendant in respect to his potential intoxication. (N.T., mistrial, 11/12/99, p. 5.) In response to our questioning, the defendant replied that be had been drinking the previous night, but that he

was sufficiently free of the influence of alcohol to assist in his defense and that he was ready to proceed to trial. (N.T., mistrial, 11/12/99, p. 5.)

The remainder of the morning of the trial passed without incident. Shortly after 12 p.m., we recessed this trial for a lunch break. (N.T., mistrial, 11/12/99, p. 45.) As defendant was not in custody, he was free to leave the courthouse to get lunch.

Court reconvened at 1:40 p.m. at which time the defendant was given a colloquy as to whether he wished to testify at trial. (N.T., mistrial, 11/12/99, p. 46.) During this questioning, the defendant appeared rather disoriented and confused about the questions that were posed to him. As these conclusions were based almost solely on the defendant's demeanor, the record in this case cannot adequately depict our observations.

Following this, there was some discussion about a missing defense witness. (N.T., mistrial, 11/12/99, pp. 45-48.) After a short break, testimony resumed. (N.T., mistrial, 11/12/99, p. 48.) Suddenly, during the cross-examination of Officer Robert Bowers, the defendant began to shout interjections. (N.T., mistrial, 11/12/99, p. 50.) After warning the defendant to keep quiet, we immediately called a sidebar to discuss the situation with counsel. (N.T., mistrial, 11/12/99, p. 50.) Defense counsel DeCecco informed the court that he did not believe that the defendant had imbibed any more alcohol. (N.T., mistrial, 11/12/99, p. 4.) However, in light of defendant's erratic behavior and pursuant to a request by the Commonwealth, we again recessed court and ordered a breathalyzer test of the defendant. (N.T., mistrial, 11/12/99, p. 51.)

Berks County Adult Probation and Parole Officer Jay Schmehl arrived shortly thereafter to administer the portable breathalyzer test. This test revealed that defendant had a blood alcohol level of approximately .179. (N.T., mistrial, 11/12/99, p. 52.) Based on this finding, we immediately called for a conference in the retiring room. (N.T., mistrial, 11/12/99, p. 52.) At that point, based upon the findings of this test as well as defendant's outburst and demeanor, we concluded that the defendant was well beyond the limit of legal intoxication. (N.T., mistrial, 11/12/99, p. 52.) We therefore stated our belief of the manifest necessity for a mistrial. (N.T., mistrial, 11/12/99, p. 52.)

Defense counsel Wertzberger objected and stated that she believed that her client was sufficiently aware of the proceedings to continue with trial. (N.T., mistrial, 11/12/99, pp. 52-53.) However, after consideration of all the factors involved, we ultimately concluded that a mistrial was the only appropriate solution to this issue. (N.T., mistrial, 11/12/99, p. 53.) We then revoked the defendant's bail and ordered him placed in custody to insure his sobriety at his next trial. (N.T., mistrial, 11/12/99, p. 54.)

Defense counsel Wertzberger subsequently filed a motion to dismiss based on double jeopardy on January 18, 2000. Said motion was denied and the defendant was retried on February 8, 2000.

Mistrial in a criminal proceeding is governed by Rule 1118(b) of the Pennsylvania Rules of Criminal Procedure, which is as follows:

"(b) When an event prejudicial to the defendant occurs during trial only the defendant may move for a mis-

trial; the motion shall be made when the event is disclosed. Otherwise the trial judge may declare a mistrial only for reasons of manifest necessity."

The Superior Court of Pennsylvania has stated the following in regards to mistrial and manifest necessity:

"Where the defendant does not consent to the mistrial, trial courts should be especially reluctant to declare a mistrial. *Commonwealth v. Bradley,* 311 Pa. Super. 330, 457 A.2d 911, 914 (1983), *aff'd,* 504 Pa. 175, 470 A.2d 524 (1984). Rather, '[t]he determination of whether to declare a mistrial after jeopardy has attached is one of utmost importance since the defendant has a substantial interest in having his fate determined by the jury first impaneled.' *Commonwealth v. McCord,* 700 A.2d 938, 943 (Pa. Super. 1997). There is no rigid rule for determining whether manifest necessity for a mistrial existed; rather, each case must ' "turn on the particular facts." ' *Commonwealth v. Balog,* 395 Pa. Super. 158, 576 A.2d 1092, 1095 (1990), quoting *Commonwealth v. Bolden,* 472 Pa. 602, 638, 373 A.2d 90, 107 (1977). However, the failure to consider less drastic alternatives to a mistrial 'creates doubt about the propriety of the exercise of the trial judge's discretion and is grounds for barring retrial because it indicates that the court failed to properly consider the defendant's significant interest in whether or not to take the case from the jury.' *[Commonwealth v.] Diehl,* [532 Pa. 214,] 217, 615 A.2d 690, 691 (1992). '[A]ny doubt relative to the existence of manifest necessity should be resolved in favor of the defendant.' *Id.*" *Commonwealth v. Rivera,* 715 A.2d 1136, 1138 (Pa. Super. 1998).

After a review of case law on this issue, this court was quite surprised to find that no court has previously ad-

dressed whether a drunken defendant constituted manifest necessity for a mistrial. We nonetheless assert that when a defendant becomes substantially impaired by alcohol during the course of trial there is manifest necessity for a mistrial.

We believe that this finding is consistent with the law of Pennsylvania. 50 P.S. §7402 governs incompetence to proceed on criminal charges. While we recognize that this section has been traditionally interpreted to apply to mental or psychological disorders, we believe it is also applicable to this instance. The relevant portion of this statute is as follows:

"(a) Definition of incompetency—Whenever a person who has been charged with a crime is found to be substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense, he shall be deemed incompetent to be tried, convicted or sentenced so long as such incapacity continues." 50 P.S. §7402.

In this case, the defendant's severe inebriation definitely caused him to have difficulty participating in his own defense. This is shown by his confusion during the colloquy as well as his outburst. We assert that as the defendant's participation in his defense was impaired, that he was therefore incompetent to be tried while under the influence of alcohol. As defendant was incompetent, the only appropriate remedy under Pennsylvania law was to immediately terminate trial until defendant was in a sober condition and was once again competent.

From a purely policy perspective, the Superior Court must agree that any criminal trial involves a host of minor decisions by the defendant and contacts with defense counsel which could ultimately be outcome determina-

tive. We would note that any decision made by a defendant during trial must have generally been knowing, intelligent and voluntary. An intoxicated person cannot make knowing, intelligent and voluntary decisions; hence the reasoning behind inquiring whether a defendant has had any mind altering substances upon accepting a guilty plea. Allowing a defendant who cannot comprehend or participate in trial decisions of intoxication to proceed through a case is simply poor policy as it certainly prejudices the defendant and allows for multiple appellate issues later. For this reason, we assert that there was manifest necessity for a mistrial.

In defendant's motion to dismiss based on double jeopardy, the defendant argues that this court improperly failed to consider other possible alternatives to a mistrial. While we did not discuss any potential alternatives at length on the record, they were certainly considered before our final decision on this matter.

Perhaps the most obvious alternative to this situation would have been recessing the court upon the discovery of defendant's drunkenness and reconvening the following day when the defendant was sober. While initially this seems like a viable option, we would note that defendant did show signs of intoxication prior to the lunch recess. While defendant may not have been as severely inebriated in the morning as he was later in the day, the events of the afternoon certainly create the high probability that the defendant was quite impaired prior to lunch. As such, all decisions made by the defendant that morning must necessarily come into question.

Since the morning session of the trial was tainted by the possibility of alcohol impairment, we obviously could

not continue to try the defendant with that same jury. Therefore the only appropriate recourse was to declare a mistrial and retry the defendant in a sober state before a new jury.

For all the foregoing reasons we assert that a mistrial was of manifest necessity and was appropriately invoked. Therefore, defendant's appeal must be denied as to this complaint.

In respect to the defendant's second issue, defendant has argued that the evidence was insufficient to find the defendant guilty of receiving stolen property in that the jury found insufficient evidence to convict the defendant of theft of immovable property.

At this time we believe it instructive to review the facts of this case:

On March 15, 1999, at approximately 7:30 p.m., Reading Traffic Engineer John Dundon was in a vehicle on Franklin Street near Seventh Street in Reading, Berks County, Pennsylvania. (N.T., jury trial, 2/8/00, p. 38.) Mr. Dundon observed two men cross the street carrying aluminum railings. (N.T., jury trial, 2/8/00, p. 38.) Mr. Dundon recognized the railings as having come from the Reading Parking Authority Parking Garage at Eighth and Franklin Streets. (N.T., jury trial, 2/8/00, p. 38.) Mr. Dundon followed the men and saw them enter 114 S. Eighth Street. (N.T., jury trial, 2/8/00, p. 39.) Mr. Dundon then proceeded to go back around the block where he encountered Reading Police Officers Pentheny, Bowers and Fisher. (N.T., jury trial, 2/8/00, pp. 40 and 57.)

After receiving information from Mr. Dundon, Officer Pentheny proceeded to 114 S. Eighth Street. (N.T., jury trial, 2/8/00, p. 58.) Upon arriving at 114 S. Eighth Street,

the officer found that the property was a city row home that had been converted into multiple apartments. (N.T., jury trial, 2/8/00, p. 58.) Officer Pentheny proceeded to the second floor, where he encountered the defendant, James Allen and Nancy Trate. (N.T., jury trial, 2/8/00, pp. 58-60.) The defendant and Mr. Allen matched descriptions that had been given to the officer by Mr. Dundon. (N.T., jury trial, 2/8/00, p. 59.) After observing that all three individuals appeared to be somewhat intoxicated, Officer Pentheny requested identification. (N.T., jury trial, 2/8/00, p. 60.) About that same time Officers Fisher and Bowers arrived. (N.T., jury trial, 2/8/00, p. 60.) Sergeant Fisher then accompanied Mr. Allen upstairs to his room to get his identification. (N.T., jury trial, 2/8/00, p. 60.)

Ms. Trate then attempted to open the door to hers and the defendant's room. (N.T., jury trial, 2/8/00, p. 61.) Upon finding it locked, Ms. Trate kicked the door, which caused it to fly open (N.T., jury trial, 2/8/00, pp. 60-61.) There in the room leaning up against the bed were the four aluminum railings clearly exposed for the eyes of the police officers. (N.T., jury trial, 2/8/00, p. 61.)

Later on November 8, 1999, David R. Readinger, operations manager of the Reading Parking Authority, traveled to the Eighth and Franklin Garage, where he confirmed that the railings recovered from the defendant's apartment matched spaces where railings had been removed from the garage. (N.T., jury trial, 2/8/00, pp. 46-50.) At trial, Mr. Readinger stated that no one had the authority to remove the railings from the garage on the date in question. (N.T., jury trial, 2/8/00, p. 48.)

Defendant subsequently called James Allen to testify. (N.T., jury trial, 2/8/00, p. 59.) Mr. Allen stated that on

March 15, 1999 he had encountered the defendant and observed the railings lying in slush by the street. (N.T., jury trial 2/8/00, p. 82.) The defendant then requested that Mr. Allen help him to take the railings back to their apartment building, which Mr. Allen willingly did. (N.T., jury trial 2/8/00, p. 82.)

With respect to the sufficiency of the evidence to sustain a conviction, the standard of review is as follows:

"In reviewing a challenge to the sufficiency of the evidence, we must determine 'whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense . . . charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.' . . . 'This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt.' . . . 'Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The fact-finder is free to believe all, part, or none of the evidence.' . . . The facts and circumstances established by the Commonwealth 'need not be absolutely incompatible with [the] defendant's innocence, but the question of any doubt is for the jury unless the evidence "be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances." ' " *Commonwealth v. Sanders,* 426 Pa. Super. 362, 367, 627 A.2d 183, 185 (1993) (citations omitted); see also, *Commonwealth v. Hodge,* 441 Pa. Super. 653, 656-57, 658 A.2d 386, 387-88 (1995).

In Pennsylvania, receiving stolen property is defined as follows:

"(a) Offense defined.—A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

"(b) Definition.—As used in this section the word 'receiving' means acquiring possession, control or title, or lending on the security of the property." 18 Pa.C.S. §3925.

In this case, the evidence shows that the defendant did possess the railings that were stolen and either knew or should have known that they were stolen.

We hesitate to spend much time discussing why defendant knew or should have known these railings were stolen as we think their being stolen would be extremely obvious to anyone. Nevertheless, we would note that in Reading, one does not generally find parking garage railings that have been violently ripped from their bases lying unattended in puddles of slush on Franklin Street. Although defendant most likely does not have the deductive reasoning of Sherlock Holmes, we would think that the mere presence of these unusual items in the street might be enough of a clue that the defendant or any average person could easily determine, that the railings were in fact stolen.

A number of cases have followed this same approach and found that circumstantial evidence may be used to establish that defendant had knowledge that property at issue had been stolen. See *e.g., Commonwealth v. Dunlap,*

351 Pa. Super. 43, 505 A.2d 255 (1985); *Commonwealth v. Whiteman,* 336 Pa. Super. 120, 495 A.2d 459 (1984); *Commonwealth v. Fox,* 259 Pa. Super. 565, 393 A.2d 970 (1978).

No evidence was presented to suggest that defendant had any intention of restoring these railings to their proper owner. For this reason, we think it quite clear that the evidence was sufficient to prove beyond a reasonable doubt that defendant was guilty of receiving stolen property.

In respect to conspiracy:

"A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

"(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

"(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime." 18 Pa.C.S. §903(a).

Evidence clearly establishes that the defendant did agree with James Allen to carry these stolen railings back to their apartment building. On this basis, we find that there was sufficient evidence to find the defendant guilty of conspiracy to commit receiving stolen property.

In support of his argument, defendant makes much of the fact that he was acquitted by the jury of theft by unlawful taking and conspiracy to commit theft by unlawful taking. Defendant apparently believes that it is illogical for him to be guilty of receiving stolen property, when he has not been convicted of stealing said prop-

erty. We would note that nowhere in Pennsylvania law does it require that a person be convicted of theft to be convicted of receiving stolen property. In consideration of the facts of this case, the verdict makes perfect sense. While we are of the belief that the defendant was most likely the culprit who severed the railings from their moorings in the parking garage, there was not enough evidence to prove this beyond a reasonable doubt as no one actually saw him do it. There was, however, unquestionable proof that the defendant did possess railings that he knew or should have known to be stolen. On this basis, we contend that the jury's verdict was logical and consistent.

For these reasons we submit that the evidence was sufficient to find the defendant guilty of theft by receiving stolen property and conspiracy. We therefore contend that this issue is without merit

For all of the foregoing reasons we hereby request that defendant's appeal be denied.